**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**LYLE VALES** **PLAINTIFF**

**V.** **No. 4:25-CV-01293-DPM-ERE**

**SOCIAL SECURITY ADMINISTRATION,**
**Commissioner** **DEFENDANT**

**RECOMMENDED DISPOSITION**

This Recommended Disposition ("RD") has been sent to United States District Judge D.P. Marshall Jr. You may file objections if you disagree with the findings and conclusions set out in the RD. Objections should be specific, include the factual or legal basis for the objection, and be filed within fourteen days. If you do not object, you risk waiving the right to appeal questions of fact.

## I. Background

On September 21, 2023, Mr. Lyle Vales filed an application for disability benefits alleging shoulder repair, multiple herniated discs in his neck, and arthritis in his back. *Tr. 18, 74.*

Mr. Vales' claim was denied initially and upon reconsideration. *Tr. 18.* On November 18, 2024, an Administrative Law Judge ("ALJ") heard testimony from Mr. Vales and a vocational expert ("VE"). *Tr. 40-73.* The ALJ issued a decision on December 9, 2024, finding that Mr. Vales was not disabled. *Tr. 18-33.* The Appeals

Council found no basis for changing the ALJ's decision, making the ALJ's decision the Commissioner's final decision. *Tr. 1-5.*

Mr. Vales, who was forty-seven years old on the alleged onset date, has a high school education and past relevant work experience as a roofer. *Tr. 31-32.*

## II. The ALJ's Decision[1]

The ALJ found that Mr. Vales had not engaged in substantial gainful activity since the alleged onset date of August 21, 2023. *Tr. 20.* The ALJ also concluded that Mr. Vales had the following severe impairments: left shoulder degenerative joint disease with full thickness tear and impingement, status-post repair; right shoulder degenerative joint disease, status-post repair; cervical degenerative disc disease, status-post fusion; mild bilateral carpal tunnel syndrome; mild right-hand synovitis; and neuropathy. *Id*. However, the ALJ concluded that Mr. Vales did not have an impairment or combination of impairments that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Tr. 22-25.*

According to the ALJ, Mr. Vales had the residual functional capacity ("RFC") to perform work at the light exertional level, as defined in 20 C.F.R. §

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)-(g).

404.1567(b), with the following limitations: (1) occasional climbing of ramps and stairs; (2) occasional crawling, but no climbing of ladders, ropes, or scaffolds; (3) occasional bilateral overhead reaching; (4) frequent bilateral handling and fingering; and (5) should avoid concentrated exposure to excessive vibration and all exposure to unprotected heights and hazardous machinery. *Tr. 25*.

The ALJ found that Mr. Vales was unable to perform any past relevant work. *Tr. 31*. In response to hypothetical questions incorporating the above RFC limitations, the VE testified that a substantial number of potential jobs were available in the national economy that Mr. Vales could perform, including marker, cashier II, and election clerk. *Tr. 32-33*. Accordingly, the ALJ determined that Mr. Vales was not disabled. *Id*.

## III. Discussion

### A. Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and determine whether the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence" in this context means "enough that a reasonable mind would find [the evidence] adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider

not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court will not reverse the Commissioner's decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

**B. Mr. Vales' Arguments for Reversal**

Mr. Vales contends that the Commissioner's decision is not supported by substantial evidence, because the ALJ: (1) erred in evaluating Mr. Vales' use of a hand-held assistive device; (2) erred in evaluating the medical opinions; and (3) erred in the Step Five determination. After carefully reviewing the record as a whole, I recommend reversing the Commissioner's decision.[2]

**C. Analysis[3]**

Mr. Vales suffered from back pain, neck pain that radiated to his lower extremities, and neuropathy. A cervical MRI from 2023 showed disc desiccation, disc bulging, facet hypertrophy, foraminal narrowing, disc height loss, and contact with the left ventral spinal cord with canal stenosis. *Tr. 26-27*. Mr. Vales underwent

---

[2] I have reviewed the entire record and the briefs and adopt the ALJ's recitation of Mr. Vales's medical history, with clarifications discussed below.

[3] The basis of this reversal is Mr. Vales' need for the use of a hand-held assistive device, and my discussion is tailored thereto. See *Noerper v. Saul*, 964 F.3d 738, 741 (8th Cir. 2020) ("Although our detailed discussion is targeted, we have considered the claimant's arguments and the record as a whole as to all of her impairments and their cumulative effect on her limitations.").

spinal fusion surgery in 2023. *Id*. His doctor advised that he should use a cane or walker for stability. *Id*.

At a follow-up appointment a few months later, Mr. Vales still reported severe pain in his neck and shoulder. *Id*. A January 2024 MRI showed a full thickness left shoulder tear with tendinopathy and arthritis, and Mr. Vales continued to have pain. *Id.* He had weakness and reduced muscle strength in his upper extremities. *Id.* Although Mr. Vales' fusion surgeon said that he could return to normal activities in early 2024, contemporaneous neck imaging showed moderate degenerative changes and severe right and left foraminal narrowing. *Id*. At a May 2024 clinic visit, Mr. Vales reported that he had fallen, but he had a normal gait and said he had some improvement. *Id*. July 2024 clinic notes showed that Mr. Vales again had a normal gait but reported needing a cane to walk around. *Tr. 28*. Throughout 2024, Mr. Vales reported neck and shoulder pain, and his provider noted in October 2024 that he walked with a cane and appeared to be in pain. *Id*. The ALJ found that Mr. Vales "uses a cane for dizziness and neck issues at the recommendation of his provider, but it was not prescribed." *Tr. 26*.

Notably, the two state-agency medical experts opined that to sustain employment, Mr. Vales would need a hand-held assistive device for ambulation. *Tr. at 76-88.* Dr. Steven Arkin reviewed the medical records in October 2023, and limited Mr. Vales to light exertional work with only four hours of standing/walking

in an eight-hour workday, and he stated that "a medically required hand-held assistive device is necessary for ambulation." *Tr. 76-78*. This accounts for Mr. Vales' complaints of pain and dizziness, even if he had some instances of normal gait at medical appointments. The ALJ found Dr. Arkin's opinion unpersuasive,[4] noting that "no evidence in the record supports the claimant being prescribed a hand-held assistive device as a medical necessity." *Tr. 29-30*. But Dr. Arkin reviewed the entire record and concluded that a hand-held device was necessary.

In March 2024, Dr. Ramona Bates reviewed the medical records and found that Mr. Vales could perform light exertional work with no more than six hours of sitting, standing, and walking in an eight-hour workday. *Tr. 84-88*. She also concluded that a "medically required hand-held assistive device is necessary for ambulation." *Tr. 86.* Because she performed a complete review of the record, Dr. Bates' opinion accounted for any instances of improvement or normal gait. The ALJ found Dr. Bates' opinion partially persuasive but did not address Dr. Bates'

[4] The ALJ must "evaluate the persuasiveness of medical opinions by considering (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's specialization, and (5) any other relevant factors." *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)). However, "[t]he first two factors—supportability and consistency—are the most important." *Id.* (citing 20 C.F.R. § 404.1520c(a)). Pursuant to the regulations, "treating physicians are [no longer] entitled to special deference." *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(a)).

conclusion that "hand-held assistive device is necessary for ambulation." *Tr. 30, 86*. Silence on that issue frustrates meaningful judicial review.[5]

In October 2024, Hannah Baugh, Mr. Vales' treating APRN, opined that he could not even perform sedentary exertional work and needed to use a cane due to "imbalance, pain, and dizziness." *Tr. 31*. She said he could sit, stand, and walk for less than two hours per workday, would need breaks every fifteen minutes, and would miss four days of work per month. *Id.* The ALJ found this opinion unpersuasive, stating that it was inconsistent with treatment records showing some normal findings (the records actually showed moderate-to-severe cervical conditions, a complex fusion surgery, and that Mr. Vales had dizziness and falls). *Tr. 26-31*. The ALJ dismissed Ms. Baugh's opinion about the necessity of cane, reasoning that although Mr. Vales used a cane at clinic visits, no doctor prescribed it. The ALJ also said that Mr. Vales' activities of daily living undermine Ms. Baugh's restrictive RFC opinion.[6]

---

[5] An ALJ must build "an accurate and logical bridge" from the evidence to his conclusions. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). Failure to do so frustrates meaningful review. *Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005).

[6] To the contrary, Mr. Vales said he could not help his wife around the house, could not prepare his own meals, could not drive, and mostly sat on the couch or on the porch all day. He said if he shopped at Walmart he used a motorized scooter. He said he used a cane at all times due to dizziness and that he was afraid of falling. He added that he had to use the wall to get to his bathroom. *Tr. 281-289*.

The ALJ asked the VE questions about a hypothetical person with limitations similar to Mr. Vales' and the ability to perform both light and sedentary work. However, the ALJ did not ask about available light work jobs if a hand-held assistive device was medically required (a limitation supported by the record). *Tr. 59-69*. Ultimately, the ALJ assigned an RFC for light work, without the hand-held assistive device limitation.

The ALJ failed to account for the two agency experts' instruction that Mr. Vales would need a hand-held assistive device because it was medically necessary, as well as Ms. Baugh's similar opinion.[7] The ALJ consistently disregarded evidence that Mr. Vales requires a cane for ambulation and did not give acceptable reasons for discounting this need. Mr. Vales argues that the ALJ relies too heavily on the fact that no hand-held assistive device was prescribed. I agree. Mr. Vales' doctor recommended a cane and the three medical opinions concluded that Mr. Vales needed an assistive device.[8]

At the very least, the ALJ should have further developed the record in the face of a conflict between three medical opinions and his final RFC finding.[9] He

---

[7] See *Goforth v. SSA*, No. 4:25-CV-00174 LPR-ERE, 2025 WL 3709004 (E.D. Ark. Dec. 22, 2025) (reversing when the ALJ ignored multiple opinions from state-agency medical experts stating that a cane was medically necessary).

[8] *Doc. No. 9 at 4-6, Doc. No. 20 at 2-6*.

[9] An ALJ does have a basic duty to develop a reasonably complete record. *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011); *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994);

could have ordered a consultative examination before adopting an RFC that appears to contradict the record evidence as whole. And because he did not ask the VE about the use of a cane for light work, we cannot know if jobs were available for that hypothetical, which undermines the ALJ's Step Five decision. For all of these reasons, I recommend reversing the ALJ's decision.

## IV. Conclusion

For the reasons above, the ALJ's decision was not supported by substantial evidence in the record as whole.

IT IS THEREFORE RECOMMENDED that the Court reverse the ALJ's decision and remand for further administrative review.

Dated 17 November 2026.

UNITED STATES MAGISTRATE JUDGE

*Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005) (further examination required to seek clarifying evidence).